UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,  )<br>)<br>Petitioner,  )<br>)<br>v.  )<br>)<br>UHS OF FULLER, INC. and UHS OF DELAWARE, INC.,  )<br>)<br>Respondents.  ) | Misc. Action No.<br>19-91541-FDS |

**MEMORANDUM AND ORDER ON PETITIONER'S MOTION
FOR ATTORNEYS' FEES AND COSTS**

**SAYLOR, C.J.**

This is a dispute concerning the enforcement of a subpoena. The subpoena was issued by the Department of Labor's Occupational Safety and Health Administration ("OSHA") as part of an inspection into workplace conditions at a hospital operated by respondents UHS of Delaware, Inc. and UHS of Fuller, Inc. Despite DOL's attempts to obtain the requested information without resorting to litigation, respondents opposed enforcement of the subpoena and failed to disclose relevant materials. That resistance was not substantially justified, and the DOL has moved for the fees and costs expended in the resultant litigation.

For the reasons set forth below, the motion will be granted in part and denied in part.

**I.  Background**

Fuller Hospital is a private facility located in South Attleboro, Massachusetts, that provides psychiatric and substance-abuse treatment. (*See* Resp't's Mem. Opp. to Pet. at 2, ECF No. 21-1). It is operated by UHS Fuller, a behavioral-health services company, which is a

subsidiary of UHS Delaware, a company that provides administrative-support services to hospitals and other facilities operated by Universal Health Services and its subsidiaries. (*See id*. at 1-2; Pet. at 2, ECF No. 1).

On May 3, 2019, OSHA received a complaint reporting an unsafe working environment at Fuller Hospital due to the staff allegedly being assaulted by patients. (Pet'r's Mem. Supp. of Pet. at 2, ECF No. 1-3). In response, OSHA commenced an inspection of the hospital's working conditions. (*Id.*). As part of that inspection, the Secretary served a subpoena upon respondents for various documents and video-surveillance footage depicting alleged workplace violence. (*Id.*). The subpoena directed respondents to produce those materials at the OSHA office in Braintree, Massachusetts, by October 8, 2019. (*Id.* at 3). On the day when the materials were due, UHS Delaware filed a motion to quash the subpoena in the United States District Court for the Eastern District of Pennsylvania. (Resp't's Mem. Supp. Mot. to Dismiss at 3, ECF No. 6-1). On October 11, 2019, UHS Fuller joined that motion. (*Id.*).

That maneuver temporarily sparked parallel legal proceedings, with respondents seeking to quash the subpoena in Pennsylvania and DOL seeking to enforce it in Massachusetts. While the motion to quash was pending, DOL petitioned this Court to enforce the subpoena on December 10, 2019. (*See* Pet.). At that time, DOL voiced concerns that respondents were not preserving the requested documents and video footage. (*See* Pet'r's Mem. Supp. of Pet. at 7-9). Respondents moved to dismiss the petition or, alternatively, transfer the action to the Eastern District. (*See* Resp't's Mot. to Dismiss, ECF No. 6). To avoid further litigation, DOL offered to withdraw the enforcement petition if respondents would agree not to destroy the requested video footage so that it would remain discoverable in anticipated civil litigation before the OSHA Review Commission. (Ex. 3, ECF No. 48-3). Respondents declined to provide any such

assurances but claimed they were taking appropriate steps to preserve relevant footage. (Ex. 6, ECF No. 48-6).

On January 6, 2020, this Court heard argument on respondents' motion to dismiss, during which the respondents were admonished to preserve any existing video footage responsive to the subpoena. (*See* Tr. Hr'g to Show Cause at 18, ECF No. 17). On January 21, 2020, the Eastern District transferred the motion to quash to this Court. (*See* E.D. Pa. Transfer Order, ECF No. 19-1). Both the motion to dismiss and the motion to transfer were denied on January 30, 2020, and the case was referred to the magistrate judge for further proceedings. (Mem. and Order on Resp't's Mot. to Dismiss, ECF No. 20; Order of Ref., ECF No. 32).

On July 8, 2020, the magistrate judge issued a report and recommendation on the petition to enforce the subpoena. (R. & R., ECF No. 42). The magistrate judge found that the DOL was authorized to seek the video footage and that respondents' arguments to the contrary were without merit. (*Id.* at 6). The magistrate judge also set forth procedures for the subpoena's enforcement, including the requirement that respondents provide, for each requested video deleted or rendered unavailable, an explanation that included the date and circumstances regarding the video's unavailability. (*Id.* at 17). On August 11, 2020, the Court adopted that recommendation and granted the petition for enforcement. (Order Adopt. R. & R., ECF No. 43). On September 8, 2020, UHS Delaware informed DOL that it possessed no video footage responsive to the subpoena. (Ex. 12, ECF No. 48-12). On September 15, 2020, UHS Fuller provided DOL with a log showing that several responsive videos had not been preserved. (Ex. 1, ECF No. 47-1).

On January 21, 2021, DOL moved under Fed. R. Civ. P. 37(a)(5)(A), as made applicable through Fed. R. Civ. P. 81(a)(5), for leave to file documentation of attorneys' fees incurred in

enforcing the subpoena. (Mot. Attys' Fees, ECF No. 47). The Court granted that motion on April 7, 2021, because a review of the record demonstrated that, under the circumstances, an award of fees would not be unjust. (Order Granting Mot. Attys' Fees, ECF No. 57). DOL was directed to file a specific request for reasonable attorneys' fees, appropriately tailored to the circumstances, without seeking reimbursement for unduly repetitive hours expended. (*Id.*) In response, DOL submitted a request for $37,406.25. (Specific Req. Fees, ECF No. 58).

## II. Legal Standard

In the First Circuit, courts follow the so-called "lodestar" method for calculating reasonable attorneys' fees. *Tenn. Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994); *see also Hutchinson v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). The lodestar method involves "multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In fashioning the lodestar, the first step is to calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *see also Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 950 (1st Cir. 1984) (explaining that a court should subtract "hours which [are] duplicative, unproductive, excessive, or otherwise unnecessary."). "[T]he court has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort." *United States v. Metro. Dist. Comm'n*, 847 F.2d 12, 17 (1st Cir. 1988) (internal quotation marks and citation omitted).

After determining the number of hours reasonably expended, the second step in calculating the lodestar requires a determination of a reasonable hourly rate—a determination that is benchmarked to the "prevailing rates in the community" for lawyers of like

"qualifications, experience, and specialized competence." *See Gay Officers League v. Puerto Rico*, 247 F.3d 288, 295 (1st Cir. 2001). In determining a reasonable hourly rate, a court must consider "the type of work performed, who performed it, the expertise that it required, and when it was undertaken." *Grendel's Den*, 749 F.2d at 951. The moving party bears the burden of establishing an attorney's level of skill and experience, and when that party fails to provide documentation as to the attorney's qualifications, a court may reduce the hourly rate. *See, e.g., Martinez v. Hodgson*, 265 F. Supp. 2d 135, 143 (D. Mass. 2003).

Finally, after determining the reasonable number of hours and hourly rate, the court may adjust the lodestar upward or downward for other factors. *Spooner v. EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011). Those factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley*, 461 U.S. at 430 n.3).

### III.  Analysis

#### A.  Petitioner's Request

Here, DOL seeks to recover $37,406.25 in attorneys' fees for the work of four attorneys in this case. The amount is broken down as follows:

| Attorneys' Fees | | | | |
|---|---|---|---|---|
| **Attorney** | **(Hours Claimed)** | **Hours Requested** | **Rate (per hour)** | **Subtotal** |
| Fromm | (17.75) | 13.25 | $375 | $4,968.75 |

5

| Culley | (46) | 15.0 | $275 | $4,125 |
|---|---|---|---|---|
| Ackerman | (83.25) | 41.5 | $375 | $15,562.50 |
| Henderson | (45.5) | 34.0 | $375 | $12,750 |

**Total: $ 37,406.25**

DOL calculated this amount by first specifying the number of hours each attorney devoted to litigation related to the enforcement of the subpoena ("Hours Claimed"). It voluntarily reduced those hours to what it viewed as a reasonable number ("Hours Requested"). Applying an appropriate hourly rate for the attorneys, based on experience and expertise, it then calculated subtotals for each attorney and an overall total for its request. In opposition, respondents contend that the Court should decline to award, or should further reduce, the sought-for amount because a lack of contemporaneous timekeeping or detailed billing records encumbers a review of the reasonableness of petitioner's request. As there is no objection to the hourly rate proposed by DOL, the Court deems those rates reasonable and will adopt them for its calculation. As a consequence, all that remains is to address parties' dispute over the reasonableness of the hours billed.

**B.     Reasonable Hours**

The imprecise manner in which DOL recorded its billable time somewhat impedes an assessment of the request's reasonableness. A fee-seeking attorney is required to exercise "billing judgment" and "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437; *see also Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978) ("As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorneys' fees in a suit in which plaintiffs were only partially successful if counsel's records do

not provide a proper basis for determining how much time was spent on particular claims."). Attorneys who anticipate requesting fees are "well advised to maintain detailed, contemporaneous time records that will enable a later determination of the amount of time spent on particular issues." *Wojtkowski v. Cade*, 725 F.2d 127, 130 (1st Cir. 1984); *see also, e.g., Grendel's Den*, 749 F.2d at 952; *Lipsett v. Blanco*, 975 F.2d 934, 937-38 (1st Cir. 1992); *Burke v. McDonald*, 572 F.3d 51, 63-64 (1st Cir. 2009). Those records should describe "with particularity the date, activity and time spent on each litigation task." *Rosie D. v. Patrick*, 593 F. Supp. 2d 325, 329 (D. Mass. 2009).

The prevailing party bears the burden of proving that the hours claimed are reasonable. *Torres-Rivera*, 524 F.3d at 340. "Where that party furnishes time records that are ill-suited for evaluative purposes, the court is hampered in ascertaining whether those hours were excessive, redundant, or spent on irrelevant issues. In such a circumstance, the court may adjust those entries to achieve an equitable result." *Id.* at 340 (internal citation omitted); *see also id.* at 336 (where entries are "too generic" to permit the court to evaluate for "excessiveness, redundancy and the like," the court "may either discount or disallow those hours."). The court may "eliminate billed hours that are not precise enough to assess whether the time spent was reasonable." *Rogers v. Cofield*, 935 F. Supp. 2d 351, 363 (D. Mass. 2013).

"The problem with imprecise records is that they fail to allow the paying party to dispute the accuracy of the records as well as the reasonableness of the time spent." *Parker v. Swansea*, 310 F. Supp. 2d 376, 392 (D. Mass. 2004) (internal quotation marks and alteration omitted); *see also Lipsett*, 975 F.2d at 938 (discounting 81.2 hours where time entries were "so nebulous" that they failed to allow the opposing party to challenge their accuracy or reasonableness); *Phetosomphone v. Allison Reed Grp., Inc.*, 984 F.2d 4, 7 (1st Cir. 1993) (time entries for

"library" and "letters to opposing counsel" excluded because they "left the court guessing about their purposes."); *Furtado v. Bishop*, 635 F.2d 915, 922 (1st Cir. 1980) (excluding time where records were ambiguous or inconsistent); *Walsh v. Boston Univ.*, 661 F. Supp. 2d 91, 107 (D. Mass. 2009) (eliminating time where entries did not adequately describe task performed).

Here, the DOL records fail to account with sufficient specificity the time devoted to each task related to subpoena-enforcement litigation. The timesheets provided are pulled from the DOL's "Matter Management System," which is the primary method for tracking the number of hours an attorney works on a particular case. (Specific Req. Fees at 3 n.2). However, as the attorneys' declarations explain, the inputting of time into MMS occurs "periodically" or "at least monthly," not contemporaneously with the work itself. (Fromm Decl. ¶ 6, ECF No. 58-1; Cully Decl. ¶5, ECF No. 58-2; Ackerman Decl. ¶ 5, ECF No. 58-3; Henderson Decl. ¶ 6, ECF No.58-4).[1] Moreover, those records only indicate the case worked on, not the specific tasks accomplished during the recorded time. To discern which hours were spent on which litigation tasks, the attorneys retrospectively consulted court dockets, personal calendars, emails, or other materials to provide an accounting of hours for petitioner's request. (Cully Decl. ¶ 6; Ackerman Decl. ¶ 6; Henderson Decl. ¶ 6).

Clearly, those records are not sufficiently precise, and specific reductions are necessary to ensure the amount awarded is equitable. The Court, therefore, is left to devise a method that awards the appropriate number of hours. For reasons discussed below, the Court will use the

---

[1] DOL contends that at least three of the attorneys contemporaneously recorded the hours they worked on the case and that it was only the entering of that information in MMS that occurred later. That may be true, but DOL did not provide the Court with the contemporaneous records. And, in any event, several attorneys had to refer to calendar entries, emails, and the like to recreate how their time was spent, calling into question how specific or thorough the contemporaneous recordings were. Ostensibly, the proper use of a system such as MMS would make this kind of after-the-fact timekeeping unnecessary.

Petition for Enforcement as a benchmark to evaluate the reasonableness of DOL's requested billable hours for the other litigation tasks for which DOL seeks compensation.

### 1. **Petition for Enforcement**

The Petition for Enforcement (ECF No. 1) was drafted by Trial Attorney Culley, who spent 46 hours drafting a six-page petition and writing the accompanying ten-page memorandum, in addition to preparing declarations from OSHA personnel and organizing the relevant exhibits. (Cully Decl. ¶¶ 4, 6). There is no issue as to her legal credentials. (*See* Specific Req. Fees at 10). However, DOL acknowledges that she "did not have extensive previous experience enforcing administrative subpoenas in federal court." (*Id.* at 5). To account for that inexperience and ensure that the time claimed in its request would be reasonable, petitioner voluntarily reduced the hours claimed for her work to 15 hours. (*Id.*).

That voluntary reduction in Cully's hours implies that an attorney of her caliber, but perhaps more experienced, could complete comparable work in about 15 hours.[2] There is obviously a measure of imprecision in that assumption: the amount of time required in writing memoranda and motions can vary considerably due to the difficulty of the legal issues involved or the gravity of the matter at hand. Moreover, not all work begins from a blank slate, as drafts of previous motions can help expedite the composition of related ones later. Context dictates the effort devoted to any given legal task, making specific and contemporaneous timekeeping records critical to this kind of request. Nevertheless, under the circumstances, the Court will accept the figure of 15 hours.

---

[2] The reasonableness of that conclusion is supported by Senior Trial Attorney Ackerman's completion of a twelve-page reply to respondents' answer (ECF No. 27) in ten hours, and OSHA Counsel Henderson's completion of the approximately ten-page Specific Request for Fees (ECF No. 58) in 9.25 hours. (Ackerman Decl. ¶ 7; Henderson Decl. ¶ 9).

### 2. Response to Respondents' Motion to Quash

Senior Trial Attorney Fromm prepared the response to the motion to quash in the Eastern District of Pennsylvania. (No. 20-mc-91102-FDS, ECF No. 7). She drafted a six-page opposition brief and coordinated the filing of the same. (Fromm Decl. ¶¶ 4-7). That work took her 17.75 hours, of which petitioner requested 13.25. (Specific Req. for Fees at 4). However, when compared to the request for Cully's work, the request for Fromm's motion appears high. Accordingly, the Court will discount the number of hours awarded for Fromm's work to 5 hours, a number that is proportionate to the estimate for Cully's work.

### 3. Motion to Transfer and Reply to Motion to Dismiss

Senior Trial Attorney Ackerman was responsible for drafting petitioner's motion to transfer from the Eastern District of Pennsylvania (E.D. Pa. ECF Nos. 17, 18) and reply to respondents' motion to dismiss before this Court (ECF No. 9). She asserts that she devoted 22.25 hours to these tasks, grouping them together on her re-created timesheet. (Ackerman Decl. ¶ 6). Together, the motion and reply totaled approximately 13 pages in length. Again, that number appears to be excessive, given the nature of the task. Under the circumstances, the Court will award 12 hours for the time spent on those two tasks, which is again a number that is proportionate to the estimate for Cully's work.

### 4. Motion for Leave to File Attorneys' Fees

Ackerman also prepared petitioner's twelve-page motion for leave to file documentation of attorneys' fees and coordinated the filing and service of the same. (ECF No. 47). She did this in concert with OSHA Counsel Henderson. DOL asserts that although both attorneys worked on this motion, the requested hours are not duplicative because Henderson worked on the motion until January 19, 2021, at which time Ackerman took over and completed it. (Specific Req. for Fees at 6 n.4). The Court has no reason to doubt that explanation, but the combined time spent

on the motion appears to be excessive—Henderson devoted 15 hours to drafting it and Ackerman contributed 7.5 more. (Henderson Decl. ¶ 6; Ackerman Decl. ¶ 7). Therefore, the Court will reduce the 22.5 hours of combined effort on the motion to 11 hours (7 for Henderson and 4 for Ackerman).

     **5.**  **Reply to Respondents' Opposition to Motion for Attorneys' Fees**

  Ackerman and Henderson also both prepared petitioner's nine-page reply to respondents' opposition to the motion to file attorneys' fees. (ECF No. 51). Henderson devoted 18.25 hours on that motion before turning the draft over to Ackerman, who spent another 6.5 hours finalizing and filing it. (Henderson Decl. ¶ 6; Ackerman ¶ 7). Thus, Ackerman and Henderson spent a combined 24.75 hours on the nine-page motion. That amount is very high, and the Court will accordingly reduce that total to 6 hours (5 for Henderson and 1 for Ackerman).

     **6.**  **Hearings**

  Ackerman also recorded a considerable amount of time for representing petitioner in two hearings related to this case. The first was an in-person hearing before the Court for which she recorded 6 hours of preparation without further detail. She also recorded 2.5 hours for traveling to and representing petitioner in the hearing, even though the hearing lasted approximately 30 minutes and the courthouse is near petitioner's Boston office. (Ackerman ¶ 6). The second was a virtual hearing before Magistrate Judge Dein for which she recorded 9.5 hours for preparing arguments and representing petitioner in the 40-minute hearing. (Ackerman ¶ 7). She also recorded an additional 5.25 hours for not only hearing preparation but also coordination with administrative and IT staff to ensure virtual readiness, but she did not distinguish between those tasks in recording her time. (Ackerman ¶ 7). Considering the high number of hours requested and the lack of detail provided by petitioner about how those hours were spent, the Court will reduce the hours devoted to the in-person hearing to 4.25 hours and the hours devoted to the

virtual hearing to 4 hours.

### 7. DOL's Voluntary Deductions

To impress upon the Court the reasonableness of its request, DOL voluntarily reduced the number of hours it requested for each attorney's work. As discussed above, the reduction of Cully's hours was explained, at least in part, by her relative inexperience compared to the other attorneys working on the case. Because Ackerman's MMS records also encompassed work she performed for other cases, DOL reduced her requested hours by approximately 50%. (Specific Req. for Fees at 6). And with respect to Fromm's and Henderson's hours, it included a reduction of 25% to ensure its request was reasonable. (*Id.* at 4, 8). The Court will accept those voluntary reductions for the work of Ackerman and Henderson not addressed above.

It bears noting that the imprecision in the MMS records is analogous to the practice of block-billing in the private sector. "Block billing is an industry term used to describe the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *E.E.O.C. v. AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) (internal quotation marks omitted). When faced with such records, a court is justified in applying a "global reduction to the lodestar hours" after making specific reductions. *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 176 (D. Mass. 2015).

As noted, the Court will accept DOL's own voluntary reductions for some tasks to which the Court has not already applied a reduction. That method is warranted because the general nature of the record-keeping renders opaque the reasonableness of the request. For example, Henderson claimed three hours to read and consider respondents' opposition to the motion for leave to file documentation of attorneys' fees, while Ackerman claimed one hour to do the same. (Henderson ¶ 6; Ackerman ¶ 7). Without greater specificity in the timekeeping, it is impossible

12

for the Court to know whether these claims are duplicative. Absent dependable records, the Court is left to rely on petitioner's estimates and voluntary reductions, which are considerable.

### 8. Adjusted Calculation

The Court will now factor the adjustments detailed above into its calculation of the number of hours to be credited to each attorney and then calculate the attorneys' fees based on the proposed rates. [3]

For Trial Attorney Culley, the Court will credit her with 15 hours of work at the proposed rate of $275 per hour, for a subtotal of $4,125.

For Senior Trial Attorney Fromm, the Court will credit her with 5 hours of work at petitioner's proposed rate of $375 per hour, for a subtotal of $1,875.

For Senior Trial Attorney Ackerman, the Court will credit her with 41.625 hours of work at petitioner's proposed rate of $375 per hour, for a subtotal of $15,609.38.

For OSHA Counsel Henderson, the Court will credit him with 23.75 hours of work at petitioner's proposed rate of $375 per hour, for a subtotal of $8,906.25.

Based on these calculations, a reasonable attorneys' fee award for petitioner is $30,515.63.

## IV. Conclusion

For the foregoing reasons, the motion for attorneys' fees is GRANTED in the amount of $30,515.63, and is otherwise DENIED.

---

[3] A complete accounting of the Court's calculations can be found in Attachment 1.

**So Ordered.**

                                                          /s/ F. Dennis Saylor IV
                                                        F. Dennis Saylor IV
Dated: October 21, 2021                         Chief Judge, United States District Court

# ATTACHMENT 1

| \<td colspan=8\> | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Court's Adjusted Calculation by Task** | | | | | | | |
| Attorney | Date | Task | Hours Claimed | Specified Reduction | Voluntary Reduction | Hours Awarded | Fee | Subtotal |
| Cully | 12/4/19-12/10/19 | Petition for Enforcement (ECF 1) | 46 | N/A | 67.4% | 15 | $275 | $4,125 |
| Fromm | 10/15/19-10/21/19 | Response to Motion to Quash (E.D. Pa., ECF 7) | 17.75 | Yes | N/A | 5 | $375 | $1,875 |
| Ackerman | 12/10/2019 | File Petition and Supporting Documents (ECF 1) | 2 | N/A | 50% | 1 | $375 | $375 |
| Ackerman | 12/12/2019 | Notice of Appearance (E.D. Pa. ECF 16) | 0.25 | N/A | 50% | .125 | $375 | $46.88 |
| Ackerman | 12/18/19 | Read respondents' motion | 2 | N/A | 50% | 1 | $375 | $375 |
| Ackerman | 12/18/19 | Email opposing counsel | 0.25 | N/A | 50% | 0.125 | $375 | $46.88 |
| Ackerman | 12/19/19 | Left voicemails for opposing counsel | 0.25 | N/A | 50% | 0.125 | $375 | $46.88 |
| Ackerman | 12/26/19-12/31/19 | Motion to Transfer (E.D. Pa. ECF 17, 18) & Response to Motion to Dismiss | 22.25 | Yes | N/A | 12 | $375 | $4,500 |
| Ackerman | 1/2/20-1/3/20 | Preparation for hearing | 6 | N/A | 50% | 3 | $375 | $1,125 |
| Ackerman | 1/6/20 | Hearing and related travel | 2.5 | N/A | 50% | 1.25 | $375 | $468.75 |
| Ackerman | 2/13/20 | Read respondents' answer (ECF 21) | 2 | N/A | 50% | 1 | $375 | $375 |
| Ackerman | 2/26/20 | Legal research related to respondents' answer (ECF 21) | 5 | N/A | 50% | 2.5 | $375 | $937.50 |
| Ackerman | 2/27/20-3/3/20 | Prepare reply to respondents' answer (ECF 27) | 10 | N/A | N/A | 10 | $375 | $3,750 |
| Ackerman | 5/7/20-5/12/20 | Preparation for virtual hearing and hearing | 14.75 | N/A | 50% | 4 | $375 | $1,500 |
| Ackerman | 1/20/21-1/21/21 | Prepare Motion for Leave to File Attorneys' Fees (ECF 47) | 7.5 | Yes | N/A | 4 | $375 | $1,500 |
| Ackerman | 2/8/21 | Read respondents' opposition (ECF 49) | 1 | N/A | Yes | 0.5 | $375 | $187.50 |
| Ackerman | 2/19/21 | Prepare reply to respondents' opposition (ECF 51) | 6.5 | Yes | N/A | 1 | $375 | $375 |
| Henderson | 12/4/20-1/19/21 | Prepare Motion for Leave to File Attorneys' Fees (ECF 47) | 15 | Yes | N/A | 7 | $375 | $2,625 |
| Henderson | 2/5/21-2/8/21 | Read respondents' opposition (ECF 49) | 3 | N/A | 25% | 2.25 | $375 | $843.75 |
| Henderson | 2/10/21-2/18/21 | Prepare reply to respondents' opposition (ECF 51) | 18.25 | Yes | N/A | 5 | $375 | $1,875 |
| Henderson | 4/26/21-4/27/21 | Statement of Fees (ECF 58) | 9.5 | N/A | N/A | 9.5 | $375 | 3,562.50 |
| **Total: $30,515.63** | | | | | | | | |